FALETUSI TUMUI, et al., Petitioners,
v.
AVIATA F. FA'ALEVAO, Attorney General, et al., Respondents.

High Court of American Samoa
Trial Division

CA No. 116-83

October 20, 1983

Before MURPHY, Associate Justice, Presiding, TAUANU'U, Chief Associate Judge and TAIMANU, Associate Judge.

Counsel: For the respondents, Aviata Fa'alevao, Attorney General
 For the petitioners, Watson & Reardon by Steven Watson

This matter comes before the court pursuant to a writ of habeas corpus. The court held an evidentiary hearing at which both petitioners and respondents were given an opportunity to offer testimony and evidence. Both sides having rested the court took the matter under advisement.

## FACTS

The facts of the case are fairly straightforward and more or less undisputed. Following what appears to be a standard operating procedure, several immigration officers descended upon the villages of Pago Pago and Aua on Wednesday, September 28. The idea was to pick up individuals who appeared[1] to be aliens and who were suspected of being in the territory illegally.

In any event, 10 or 12 Tongans were picked up, i.e., arrested, and taken to the immigration office. There they were identified and warrants issued for their arrests. They were not informed of any rights they might have, but were told that they could depart the territory voluntarily (The next boat for Tonga was leaving Saturday morning.) or be held for deportation heaings. Most opted to "voluntarily" board the boat. Nevertheless they appear to have been held in jail until the boat was ready to sail to make sure no one changed his mind.

Caught up in this particular dragnet were two extraordinary cases which probably brought the matter before the court, unlike the previous undertakings. One of the Tongans, Amini Taivai, had previously engaged a lawyer and was suing the government. The court had entered an order temporarily restraining his deportation. He was able to call his lawyer. When the lawyer appeared and explained the situation the immigration officers backed down and released Amini. Another individual, Tofua Ioane, was arrested and

---

[1] It is common knowledge that a large percentage (perhaps as much as 50%) of the local population are aliens: mostly Western Samoans, Tongans or Orientals. Most appear to enter legally under some sort of temporary permit and then overstay.

despite his protest that he was a United States citizen he was incarcerated pending voluntary departure or deportation. Unfortunately, Tofua was telling the truth and in fact is a naturalized U.S. citizen.

The next day, Thursday, he was allowed to make a phone call from jail. He called a friend who took Tofua's proof of citizenship to the Immigration Office. The officers were convinced and issued an order for his release. The prison doors swung open—but slowly. No one at Immigration had a car so the release order did not reach the prison until the next afternoon. At that time Tofua was released, having served two days' imprisonment for the crime of being of Tongan ancestry.

## STATEMENT OF THE CASE

The relief petitioners seek is set forth in their points and authorities, page 4: "If the court finds that they were subjected to an unlawful detention the court can fashion a remedy which should prevent such an incident in the future."

## CONCLUSION AND ORDER

The fact that the attorney general, cum chairman of the Immigration Board, has frog-marched most of the petitioners off island does not necessarily render their petition moot. Under Hensely v. Municipal Court (1973) 411 U.S. 345, 36 L. Ed. 2d 294, actual custody is not required for federal habeas relief if the petitioner is subject to restraints not shared by the public generally. In the case before us the two unnamed petitioners appear to be under some threat of incarceration or coerced departure from the territory. The named petitioners are probably under restraint from attempted return.

We strongly disapprove of the attorney general's sharp practice of pushing the petitioners aboard a ship knowing that a habeas petition was pending. They were entitled to their day in court, regardless of whether or not they were ultimately entitled to remain in the territory. To slyly contend that their departure was voluntary is to completely ignore reality. Similar conduct in the future should be met with sanctions.

As to the original arrests, this procedure also merits disapproval. A.S.C.A. section 41.0533, covering arrests without a warrant, provides as follows:

> (a) Any immigration officer may arrest without a warrant any alien who in his presence or view is entering or attempting to enter American Samoa in violation of any law or regulation made in pursuance of law regulating the admission, exclusion or expulsion of aliens, and may arrest any alien in American Samoa if he has reason to believe that the alien is in American Samoa in violation of the law or a regulation and is likely to escape before a warrant can be obtained for his arrest. [Emphasis added.]
> (b) The person making the arrest without a warrant in accordance with this section shall immediately thereafter make an affidavit and apply to the Attorney General for an order of arrest and commitment, until the board's next meeting, of the person under arrest.

Warrantless arrests should be the exception, not the rule.

Aliens are not entirely without rights. For example, upon arrest they are entitled to bail. A.S.C.A. section 41.0630. They should be meaningfully informed of their rights.

A far better procedure to meet the problem of aliens unlawfully in the territory would be to follow the lead of other government departments and embrace the computer age. The traffic court is but one example of a brilliant use of a relatively simple computer system. The immigration board could computerize all aliens (and all residents for that matter). When the alien's period of stay passes, the computer would automatically furnish that information and a warrant would issue. Then after the warrant issued the alien could be located and appropriate action taken.

In addition to preventing wrongful arrests the computer would, for the first time, allow the immigration board to have an accurate census of who is living here and each person's status. In other cases before the court we have seen examples of entire families living here for years. The immigration board has been oblivious to their existence until they apply for permanent status--which they are entitled to after ten years' residency. Hopefully these suggestions if followed will reduce future litigation and assist the board in an admittedly difficult task.

However, these are suggestions, not orders. The case before us does not appear to be the proper vehicle for a judicial overhaul of the modus operandi of the immigration board.

Therefore, the petition is granted as to Amini Taivai and Tofua Ioane. The immigration board is to take no further action against Amini pending outcome of his litigation and is permanently enjoined from such action as to Tofua Ioane.

As to all other petitioners the matter is dismissed.